Thomas Edward Spangler v. Tex. Dept. of Protective & Regulatory Services











 



IN THE
TENTH COURT OF APPEALS
 

No. 10-97-210-CV

     THOMAS EDWARD SPANGLER,
                                                                              Appellant
     v.

     TEXAS DEPARTMENT OF PROTECTIVE
     AND REGULATORY SERVICES,
                                                                              Appellee
 

From the 19th District Court
McLennan County, Texas
Trial Court # 95-4209-1
                                                                                                                

O P I N I O N
                                                                                                                

      Appellee, the Texas Department of Protective and Regulatory Services (“DPRS”), filed suit
to terminate the parental rights of appellant, Thomas Edward Spangler, with respect to his two
daughters. As grounds for termination, DPRS alleges that Spangler: (1) knowingly placed or
knowingly allowed his children to remain in conditions or surroundings which endangered their 
physical or emotional well-being; (2) engaged in conduct or knowingly placed his children with
persons who engaged in conduct which endangered the physical or emotional well-being of the 
children; (3) failed to support the children in accordance with his ability during a period of one
year; and (4) that termination of the parent-child relationship would be in the best interest of the
children. Tex. Fam. Code Ann. § 161.001 (Vernon 1996). The jury found that Spangler
engaged in the conduct alleged and that termination was in the best interest of the children. The
trial court signed a decree terminating parental rights.
      Spangler brings this appeal asserting in one point of error that the trial court erred in
rendering judgment because the jury’s findings of fact were not supported by factually sufficient
evidence. We will affirm the judgment.
FACTUAL BACKGROUND
      Spangler is the father of two girls, seven year old M.R.S. and five year old R.D.S. In 1994,
a grand jury indicted Spangler for sexually assaulting a child. On June 25, 1995, officers with the
Bellmead Police Department arrested Spangler for driving while intoxicated while his daughters
were in the vehicle. In 1996, Spangler was incarcerated for six counts of felony retaliation against
DPRS employees. On March 24, 1997, this case was submitted to a jury and the trial court
terminated the parent-child relationship between the children and Spangler as well as with their
biological mother.
POINT OF ERROR
      Spangler’s sole point of error alleges that the evidence is factually insufficient to support the
jury’s finding that he engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangered the physical or emotional well-being of the children. 
Spangler also asserts that the evidence is factually insufficient to support the jury’s finding that he
failed to support the children during the one year period preceding the filing of the termination
petition.
TERMINATION OF PARENTAL RIGHTS
      The natural right existing between parents and their children is of constitutional dimension. 
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). The termination of parental rights involves
fundamental constitutional rights. Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212,
31 L. Ed.2d 551, 558 (1972). A termination decree is complete, final, irrevocable, and divests
for all time that natural right as well as all legal rights, privileges, duties, and powers with respect
to each other except for the child’s right to inherit. Holick, 685 S.W.2d at 20.
      In proceedings to terminate the parent-child relationship brought under Section 161.001 of the
Family Code, the petitioner must establish one or more acts or omissions enumerated under
subsection (1) of the statute and must additionally prove, that termination of the parent-child
relationship is in the best interest of the child. Richardson v. Green, 677 S.W.2d 497, 499 (Tex.
1984). Both elements must be established, and proof of one element does not relieve the petitioner
of the burden of proving the other. See Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976);
Wiley v. Spratlan, 543 S.W.2d 349, 351 (Tex. 1976).
CLEAR AND CONVINCING EVIDENCE
      Termination of parental rights is a drastic remedy and is of such weight and gravity that due
process requires the petitioner to justify termination by “clear and convincing evidence.” In re
G.M., 596 S.W.2d 846, 847 (Tex. 1980). This standard is defined as “that measure or degree of
proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth
or the allegations sought to be established.” Id. Although the clear and convincing standard of
proof required at the trial level is well settled, the standard of appellate review to be applied by
this court is not as well defined. In re L.R.M., 763 S.W.2d 64, 65 (Tex. App.—Fort Worth 1989,
no writ). 
      Texas law requires this court to determine if the trial court adhered to the clear and convincing
standard of proof. Baxter v. Texas Dep’t of Human Resources, 678 S.W.2d 265, 267 (Tex.
App.—Austin 1984, no writ). The Texas Supreme Court has held that termination proceedings
should be “strictly scrutinized.” Holick, 685 S.W.2d at 20; G.M., 596 S.W.2d at 846. “In
reviewing the factual sufficiency of the record in a termination suit, [the court of appeals] must
consider all of the evidence as required by In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660
(1951), while applying the ‘clear and convincing evidence’ standard of proof.” G.M. v. Texas
Dep’t of Human Resources, 717 S.W.2d 185, 187 (Tex. App.—Austin 1986, no writ). 
      However, it is imprecise to say that the court of appeals should apply the clear and convincing
standard of proof because the standard of proof must, by definition, be applied in the trial court. 
L.R.M., 763 S.W.2d at 66. The Dallas Court of Appeals recognized this distinction in
Neiswander v. Bailey, 645 S.W.2d 835, 835-36 (Tex. App.—Dallas 1982, no writ) (citing Beeler
v. American Trust Co., 24 Cal. 2d 1, 147 P.2d 583, 600 (1944) (Traynor, J., dissenting); Bryant
M. Bennett, Comment, Evidence: Clear and Convincing Proof: Appellate Review, 32 Cal. L.
Rev. 74, 78 (1944). In Neiswander, the court held: 
[I]t is the duty of the appellate court in reviewing the evidence to determine, not whether
the trier could reasonably conclude that the existence of a fact is more probable than not,
as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the
existence of a fact is highly probable.

Neiswander, 645 S.W.2d at 835-36. This standard of appellate review recognizes that the trier
of fact judges the credibility of witnesses. Wayland v. City of Arlington, 711 S.W.2d 232, 237 
(Tex. 1986). However, using the term “highly probable” is an unnecessary complication because,
in this context, “highly probable” is merely a synonym for “clear and convincing.” L.R.M., 763
S.W.2d at 66. 
      Therefore, the rule adopted by this court is stated as follows: When the trier of fact is required
to make a finding by clear and convincing evidence, the court of appeals will only sustain a point
of error alleging insufficient evidence if the trier of fact could not reasonably find the existence
of the fact to be established by clear and convincing evidence. See L.R.M., 763 S.W.2d at 66-67. 
We do not believe that the Texas Supreme Court intends to require trial courts to adhere to a
higher standard of proof in termination cases while allowing the courts of appeals to use the same
standard of review as in cases decided by a preponderance of the evidence. Id. 
      Therefore, just as the clear and convincing standard of proof is an intermediate standard,
falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings, this standard of appellate review is an intermediate standard. 
Neiswander, 645 S.W.2d at 835; See also Justice Bill Vance, The Clear and Convincing Evidence
Standard in Texas: A Critique, 48 Baylor L. Rev. 391 (1996). This intermediate standard of
review is necessary to protect the fundamental constitutional rights involved by termination of
parental rights. Compare G.M., 596 S.W.2d at 846.
      Our holding can be reconciled with earlier cases in which the Texas Supreme Court refused
to apply a clear and convincing standard. Meadows v. Green, 524 S.W.2d 509, 510 (Tex. 1975)
(per curiam), and cases cited therein. In Meadows, the court stated:
In reaching its decision the Court of Civil Appeals has sought to apply a third standard
of reviewing the evidence presented at trial–the “clear and convincing” standard. In
Texas there are but two standards by which evidence is reviewed: factual sufficiency and
legal sufficiency. The requirement of clear convincing evidence is merely another
method of stating that a cause of action must be supported by factually sufficient
evidence. 
 
Id. 
      This court must still determine whether the evidence at trial was factually sufficient to support
a finding of clear and convincing evidence. See Bonham v. State, 680 S.W.2d 815, 819 (Tex.
Crim. App. 1984) (in a criminal appeal, appellate court must determine if a rational trier of fact
could have found elements of crime beyond reasonable doubt).
      Other principles of law relating to sufficiency of evidence are still applicable even when an
intermediate standard of review is used. L.R.M., 763 S.W.2d at 67. In preponderance cases,
insufficient evidence points should be sustained when: (1) the evidence is factually insufficient
to support a finding by the preponderance of the evidence; or (2) a finding is contrary to the great
weight and preponderance of the evidence. Robert W. Calvert, “No Evidence” and “Insufficient
Evidence” Points of Error, 38 Tex. L. Rev. 361, 366 (1960). Likewise in a clear and convincing
case, an insufficient evidence point may be sustained when: (1) the evidence is factually
insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary
to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to
be clear and convincing. L.R.M., 763 S.W.2d at 67.
THE EVIDENCE
      Spangler contends that the evidence was factually insufficient to support the jury’s affirmative
answers terminating the parent-child relationship between Spangler and his daughters. The record
indicates that twelve witnesses testified about Spangler’s course of conduct concerning his
daughters and the condition of his home.
      Mrs. Spangler, the mother of M.R.S. and R.D.S., and Spangler’s ex-wife, testified that she
began living with Spangler when she was twelve and married him when she was fourteen. She
testified that Spangler abused her in front of M.R.S. and R.D.S. and consumed a twelve pack of
beer daily. She stated that Spangler requested that she assist him in raping a thirteen year-old girl,
who was living with them. The girl eventually filed rape charges against him in Limestone
County. Mrs. Spangler testified that she took M.R.S. and R.D.S. to San Angelo to remove the
girls from their trailer where Spangler and a friend were undertaking a “drug cook-off.” 
      Joyce Middleton, Mrs. Spangler’s mother, testified that she witnessed Spangler threaten to
kill Mrs. Spangler and that he repeatedly beat her while M.R.S. watched. Middleton testified that
Spangler threatened to kill two DPRS workers and blow up the DPRS building. Additionally,
Middleton testified that Spangler drank every night and awakened her one morning while staying
at her place in Prairie Hill by playing with her “private.” Middleton also recalled that Spangler
caused M.R.S. to cry when he washed her, because he “played with her the wrong way.” 
      Spangler’s testimony reveals that he has been married five times, has eleven or twelve
children, and considers himself to be an alcoholic. He testified that on June 25, 1995, he was
arrested for driving while intoxicated with his daughters in the car. DPRS took the girls from him
after the arrest because DPRS and the Limestone County Court told him not to drink around the
girls. 
      Spangler admitted that he had hit Mrs. Spangler and threatened to kill her in the presence of
M.R.S. He further testified that he once gave forty dollars to the family taking care of the girls
and took money over almost weekly. He stated that he plans for M.R.S. to attend college,
although his imprisonment has prevented his savings for this purpose. Spangler failed to state any
future plans for R.D.S.
      Anna Clark, a conservatorship case worker for DPRS, testified to the following:
∙DPRS’ first referral occurred after Spangler’s indictment for rape charges in
Limestone County in 1994.
 
•DPRS’ second referral for physical neglect and neglectful supervision occurred in
September of 1994.
 
•The plan of service for Spangler included participation in psychological evaluations,
parenting classes, and a sex offenders class as well as maintaining stable employment
and a home free of hazards.
 
•Reports from a September 1994 visit stated that the parents were extremely dirty and
the house odorous, while Spangler appeared drunken and slurred his speech. The
nipple of M.R.S.’ baby bottle was filthy, and her formula was spoiled.
 
•Observation of Spangler’s house in November 1996 revealed fly infestation and
odors emanating from inside the house.
 
•Reports of Spangler’s wife’s house, where M.R.S. and R.D.S. resided after Spangler
separated from his wife, indicated that the small quantity of food in the refrigerator
was spoiled. Nails protruded from the top of the one doorway all the way to the
floor in addition to the presence of exposed wiring. Additionally, soiled sheets
covered the beds, and broken glass was scattered across the back yard. Clark stated
that the conditions of the house were dangerous for the girls.
 
•During Spangler’s visitation with his daughter M.R.S., she began crying and refused
to stay in the observation room with him.
 
•When informed that DPRS was filing a petition to terminate his parental rights,
Spangler stated that if anyone tried to take away his children, he would kill them.
 
•Spangler repeatedly threatened to kill Clark in person and threatened her and her
supervisor over the phone.
 
•Clark concluded that termination of Spangler’s parental rights would be in the best
interest of M.R.S. and R.D.S.

      Dr. James N. Shinder, a clinical psychologist, testified to performing a psychological exam
on Spangler on December 19, 1994, which revealed a criminal personality prototype with
antisocial traits and qualities. The exam also indicated that Spangler is aggressive, relies on
violence to resolve matters, and relates to others based on intimidation and manipulation. 
Additionally, Dr. Shinder testified that Spangler became angry during his sessions and frequently
spoke about guns, explosives, and stabbing people. 
      Jesse Guardiola, a supervisor at DPRS, testified that Spangler threatened to kill him over the
phone. Guardiola stated that the parental rights of Spangler should be terminated in part because
M.R.S and R.D.S. are very adoptable and are unlikely to be separated from each other.
      Debbie Shehorn, a staff therapist for Dr. Shinder, testified that M.R.S. recalled her father
fighting with her mother and an incident where he knocked her down and “pummeled” her with
his fists. Shehorn testified that M.R.S. expressed very slight remorse or sadness over her
separation from her father. Further, Shehorn witnessed M.R.S. state her desire for parents who
will be her parents forever. According to Shehorn, M.R.S. did not cry when she was told that 
parental rights would be terminated.
      Sheila Robertson, the court appointed special advocate for M.R.S. and R.D.S., stated that in
October 1996 she accompanied Clark to Mrs. Spangler’s house and that the conditions at the
house, such as flies in the house and broken glass in the yard, were as Clark testified. Robertson
testified that termination of Spangler’s parental rights was in the best interest of the children. 
Further, she testified that M.R.S. told her in March of 1997 that she wants to be adopted.
      Dwain Thomason, a farmer and postal employee in Prairie Hill, testified that Spangler’s wife
worked for him and he recalled seeing Spangler intoxicated at his place.
      Peggy Anderson of Coolidge testified that Spangler and his family lived in a trailer behind her
house. She recalled cleaning out spoiled baby bottles when she babysat M.R.S. and R.D.S. and
that young R.D.S. remained in her car seat for long periods of time. Anderson testified that not
only did she hear Spangler fighting with Mrs. Spangler, but sometimes the girls came over to tell
her they were fighting again. One night, according to Anderson, police even came out to
Spangler’s trailer.
      Charles Cotton testified that Spangler worked for him at a cemetery for two years and eight
months. During this time, he recalled that M.R.S. and R.D.S. were dirty when he saw them. 
Cotton testified that Spangler was a trusted employee to whom he loaned money and helped retain
a lawyer after Spangler was charged with raping a young girl. Spangler lived at the cemetery
prior to his arrest for retaliation against DPRS. Cotton testified to hearing Spangler speak of
violence and he knew Spangler was charged and convicted of threatening another man with a knife
in 1993. Cotton testified that his nephew, who has one adopted child, had inquired about adopting
M.R.S. and R.D.S.
      Virginia Pate, the former owner of the wrecking yard where Spangler worked, testified that
Mrs. Spangler, M.R.S., and R.D.S. began living with her after Spangler’s imprisonment in
September 1995. Pate testified that M.R.S. and R.D.S. lived with them for one and a half years
and Spangler never gave money to support them, although he bought diapers for R.D.S. Pate
testified that she has raised six children and has filed an application to adopt M.R.S and R.D.S.
if Spangler’s parental rights are terminated.
      Since termination of parental rights requires that the trier of fact make a finding by clear and
convincing evidence, this court will only sustain a point of error alleging insufficient evidence if
the trier of fact could not reasonably have found the existence of the fact to be established by clear
and convincing evidence. Accordingly, the question is whether the jury reasonably could have
found clear and convincing evidence to prove that Spangler either: (1) engaged in conduct or
knowingly placed the children with persons who have engaged in conduct which endangers the
physical or emotional well-being of the children; or (2) failed to support his children for a period
of twelve consecutive months. 
      Additionally, the court asks whether the jury reasonably could have found by clear and
convincing evidence that termination of the parent-child relationship is in the best interest of the
children. Tex. Fam. Code Ann. § 161.001 (Vernon 1996). If the evidence shows a course of
conduct on Spangler’s part “which has the effect of endangering the physical or emotional well-being of” his children, a finding under § 161.001(1)(E) will be upheld. Texas Dep’t of Human
Servs. v. Boyd, 727 S.W.2d 531, 534 (Tex. 1987). Likewise, if the evidence shows that Spangler
failed to support his daughters during a period of twelve consecutive months ending within six
months of the date of the filing of the petition, a finding under § 161.001(1)(F) will be upheld.      A parent’s abuse of a spouse can suffice to support termination of the abuser’s parental rights. 
See Lucas v. Department of Protective & Regulatory Servs., 949 S.W.2d 500, 503 (Tex.
App.—Waco 1997, pet. denied); B.J.B., 546 S.W.2d 674, 676 (Tex. Civ. App.—Texarkana 1977,
writ ref’d n.r.e.). Evidence of a parent’s imprisonment may contribute to a finding that the parent
engaged in a course of conduct which endangered a child’s physical or emotional well-being. 
Boyd, 727 S.W.2d at 534; Harris v. Herbers, 838 S.W.2d 938, 942 (Tex. App.—Houston [1st 
Dist.] 1992, no writ). 
      A father has the legal duty to support his child, even when not ordered by the trial court to
make payments of support. Laslie v. Cole, 465 S.W.2d 811, 813 (Tex. Civ. App.—Corpus
Christi 1971, no writ). Occasional gifts are insufficient to fulfill a parent’s obligation of support. 
Homfiel v. Pence, 487 S.W.2d 224, 228 (Tex. Civ. App.—El Paso 1972, no writ). 
      Middleton, Anderson, Mrs. Spangler, and Spangler himself testified that he abused Mrs.
Spangler by hitting her with his open hand, “pummeling” her with his fists, kicking her, and
threatening to kill her, all in the presence of M.R.S. and R.D.S. From this evidence, the jury
could reasonably have found the existence of spousal abuse by clear and convincing evidence, such
that termination of parental rights is appropriate. B.J.B., 546 S.W.2d at 676.
      At the time of trial, Spangler was incarcerated, serving a sentence stemming from felony
retaliation. Spangler spent a considerable amount of time in prison and jail on other charges
during the years his family was under a DPRS plan of service. Based on this evidence, the jury
could have reasonably found by clear and convincing evidence that Spangler engaged in a course
of conduct which endangered his daughters’ physical or emotional well-being such that termination
of his parental rights was appropriate. See Boyd, 727 S.W.2d at 534.
CONCLUSION
      Spangler is a man of 49 years, who has been married five times, claims to have eleven or
twelve children, and admits to alcoholism. He admits to having regularly abused his wife in the
presence of his daughters. He was arrested for driving while intoxicated with his daughters in the
car. His mother-in-law testified that he caused M.R.S. to cry when he washed her because he
“played with her in the wrong way.” His most recent troubles include indictments for the sexual
assault of a fourteen year old girl, threatening a man with a knife, and felony retaliation against
DPRS employees.
       Under the clear and convincing standard of review, we find that the jury reasonably could
have found that Spangler engaged in conduct or knowingly placed the children with persons who
have engaged in conduct which endangered the physical or emotional well-being of his children. 
 Having found sufficient evidence of the endangerment ground, we need not address the failure
to support ground. 
      Likewise, after consideration of the factors set out in Holley, and the evidence before the trial
court, we find that the evidence supports the trial court’s finding that the best interest of the
children will be served by terminating Spangler’s parental rights. Holley, 544 S.W.2d at 371-72.
      Therefore, we overrule Spangler’s point of error and affirm the judgment of the trial court.
 
 
                                                                               REX D. DAVIS 
 Chief Justice


Before Chief Justice Davis
      Justice Cummings and
      Justice Vance
      (Justice Cummings concurring)
Affirmed
Opinion delivered and filed February 4, 1998
Publish